```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK



----------------------------X
                            :
BLOCKCRUSHR, INC.,          :
                            :   20-CV-3134 (FB)(RLM)
           Plaintiff,       :
                            :   October 7, 2020
                            :
           V.               :   Brooklyn, New York
                            :
CONSENSYS, FUND, IIP,       :
et al.,                     :
           Defendant.       :
----------------------------X


     TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
          BEFORE THE HONORABLE ROANNE L. MANN
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        KYLE ROCHE, ESQ.




For the Defendant:        TIBOR NAGY, ESQ.


Audio Operator:


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE COURT:  Good afternoon, this is Judge

2   Mann on the line.  I'm conducting a telephonic initial

3   conference in BlockCrushr, Incorporated v. ConsenSys,

4   Inc., et al., 20-CV-3134.  I hope everyone is safe and

5   healthy.

6          Do I have plaintiff's counsel on the line?

7          MR. ROCHE:  Yes, your Honor, this is Kyle

8   Roche from Roche Cyrulnik Freedman for plaintiff, and

9   I'm joined by my colleagues, Richard Cipolla and Warren

10  Li, also from Roche Cyrulnik Freedman.

11         THE COURT:  I'm sorry, I didn't catch the

12  second name.  I don't believe that individual is on the

13  docket, so could I have that name again?

14         MR. ROCHE:  Yes, Warren Li.

15         THE COURT:  No, I got your name.  Richard,

16  and I didn't catch the last name.

17         MR. ROCHE:  Cipolla, C-i-p-o-l-l-a.

18         THE COURT:  All right.  And who is on for

19  defendants?

20         MR. NAGY:  Good afternoon, your Honor.  This

21  is Tibor Nagy of Dontzin Nagy.  I'm here for

22  defendants, and my colleague, Heidi Schumann, is on the

23  phone as well.

24         THE COURT:  And I don't believe Ms. Schumann

25  is on the docket, either.  Could I have the spelling of

1  your last name, Ms. Schuman?

2            MS. SCHUMANN:  Yes, your Honor.  It's S-c-h-

3  u-m-a-n-n.

4            THE COURT:  All right, welcome to all of

5  you.  As I state at the outset, this is on for a

6  telephonic initial conference.  Before I turn to the

7  questionnaire that counsel have submitted, I would like

8  to get a better understanding about the underlying

9  facts of the case.  I've read the complaint, which is

10  quite detailed and has given me a fairly good sense of

11  what the plaintiff's contentions are.  But as is true

12  in most cases, the answer is not that illuminating, so

13  I will give defense counsel an opportunity to set forth

14  your theory of the case.

15            So will that be Mr. Nagy or Ms. Schumann

16  taking the lead on that?

17            MR. NAGY:  Mr. Nagy, your Honor.  Thank you

18  for the opportunity to address that.  I think, your

19  Honor, we have several responses and theories of the

20  case.

21            Let me start first and foremost by saying we

22  certainly dispute any allegation that we

23  misappropriated any trade secrets.  This technology at

24  issue here, this idea of using cryptocurrency for

25  recurring payments is fairly well known in the

1   marketplace.  It was considered by a lot of companies,

2   not just this one, your Honor, and no one ultimately

3   had decided to do it because it's just a bad idea.

4          I would point out, your Honor, in this case,

5   as you say in the complaint, the entity that was

6   alleged to have misappropriated the trade secrets, this

7   entity called Daisy -- Daisy, your Honor, I don't

8   believe this is in dispute.  Daisy never took off, has

9   been wound down, never had any customers or any

10  revenues much less any profits, so there's really no

11  money at stake in this case.  Again, we dispute that

12  there was any misappropriation of trade secrets but

13  we're kind of baffled that this is being pursued at all

14  for that reason.  And I would note, tellingly,

15  plaintiff didn't even sue Daisy.  In most trade secret

16  cases, the target that's using the alleged trade

17  secrets is sued and you ask for an injunction stopping

18  it from doing what it's doing.  That's not present here

19  because that just didn't happen here.

20         In addition, your Honor, as I alluded to,

21  this isn't a particularly secret idea, this central

22  idea of using cryptocurrency for recurring payments.  A

23  lot of other companies considered it.  If we go the

24  distnce, at some point, we think there will be a motion

25  for summary judgment before you.  It will point to the

1  lack of evidence of any misappropriation.  It will also

2  point to the fact that there are no real trade secrets

3  at issue in this case.

4        One of the things, your Honor, that makes

5  this particular case unique is -- I spoke with counsel

6  before he even filed suit and as you saw, your Honor,

7  on your docket, we entered into an agreement whereby

8  defendants agreed that we would not pursue any Rule 12

9  motion.  And in exchange, the key thing we wanted was

10  for counsel to tell us, what are these purported trade

11  secrets?  Just disclose them to us.  And we got that

12  agreement by way of an interrogatory.  The plaintiff

13  here has told us what the trade secrets are.

14        We have some dispute as to whether the

15  response they sent us is adequate.  We're meeting and

16  conferring about that now.  We may need your assistance

17  with that.  Hopefully, we don't.  But the point here

18  is, we wanted to get that information early and we

19  certainly are confident about using it in a summary

20  judgment motion down the line, based on the various

21  theories I've mentioned, that these aren't really trade

22  secrets, that this company really didn't have any of

23  its trade secrets misappropriated by us, and that there

24  are no damages here at all, et cetera.

25        I think the last thing, your Honor, I'll say

1   is, on this damages point, we recently got pursuant to

2   your order initial disclosures from counsel for

3   plaintiff, and we looked at the claim of damages and we

4   really can't understand it.  We're at a loss as to what

5   the damages here are.  There's no concrete description

6   of what they are at all, and I would -- it seems to us

7   there really can't be, given the reality that Daisy

8   never took off, never had any revenues, et cetera.  So

9   that, your Honor, in a nutshell is our view of this

10  case.

11              THE COURT:  Hello?

12              MR. NAGY:  Yes, Mr. Nagy speaking.  I'm

13  still here.

14              THE COURT:  All right, is there anything

15  else for the Court to tend to?

16              MR. NAGY:  Your Honor, Mr. Nagy speaking

17  again.  The only thing, your Honor, I would bring to

18  your attention is, I think we have -- counsel for

19  plaintiff and myself, we have worked out I think almost

20  every issue in your questionnaire by agreement.  I

21  think to date, we have worked well together in reaching

22  agreement on issues, and I think a testament to that

23  fact is the fact that we were able to work out an

24  agreement along the lines that I discussed about

25  avoiding Rule 12 motions in exchange for an

1   interrogatory response.

2            I would just call to your attention that if

3   we're unable -- we have that response now and we think

4   it's inadequate in several ways.  If we're unable to

5   resolve it, that is an issue that, on our side, we

6   would want to get some quick relief on, so we would

7   come to you seeking that relief.  I hope we'll avoid

8   that.  Counsel and I conferred and we've agreed that

9   they're going to supplement that response, but that is

10  a time sensitive issue for us because it's something we

11  specifically bargained for early in the case.  Other

12  than that, I think every issue, as you can see in the

13  questionnaire we submitted, has been worked out by

14  agreement.

15           THE COURT:  Well, before we turn to

16  scheduling, would counsel for plaintiff like to respond

17  to that presentation?

18           MR. ROCHE:  Your Honor, I'll respond

19  briefly, just taking Mr. Nagy's points in reverse

20  order.  I do think we've worked well together to date.

21  And with respect to his points on the interrogatory

22  response, the agreement, the pre-suit agreement that he

23  referenced specifically contemplated a supplement to

24  those interrogatory responses relating to the source

25  code.  In fairness to Mr. Nagy, he has asked for things

1  outside of the source code specs for us to revisit and

2  has asked for some more detail to what is already a

3  very detailed description of the trade secrets that are

4  at issue in this litigation.  We're going to do that

5  and we're going to be as detailed as possible and as we

6  think the law requires us to be.  I hope that we can

7  work that out between us but if not, then we'll be back

8  in front of you on that.

9        As to the merits of the case, you know, I do

10  think the existence of the agreement not to do 12(b)(6)

11  motions speak to the, as you pointed out, the detailed

12  nature of the allegations in the complaint are not

13  legally insufficient.

14        As to the question on damages, Mr. Nagy

15  points out that, yes, we did not sue Daisy Payments,

16  the group that initially took the trade secrets.  The

17  reason that is is because that product, the recurring

18  payment platform, was incorporated into the parent

19  company, ConsenSys and in fact has been advertised in a

20  suite of software products that they intend to offer.

21  And while we don't have full access at this time to

22  what defendants have used or how they've profited or

23  how they intend to profit from the trade secrets, we do

24  intend to seek that type of information in discovery

25  and we feel confident we will be able to show

1    significant damages at summary judgment and at trial.

2            As to, you know, the merits of liability in

3    this case, there are two theories of liability.  One is

4    breach of contract, the second is trade secrets.  I'm

5    not going to get into the details of either of those

6    theories unless your Honor would like.  But as to the

7    trade secrets liability, even -- I believe Mr. Nagy is

8    saying that -- I'm not aware of this.  We have not

9    gotten there in discovery, but that this idea may have

10   existed in the marketplace.  But even if the idea

11   itself existed in the marketplace, that does not

12   foreclose liability and trade secrets.

13           The law is clear that taking trade secrets

14   that speed up your ability to get to market is a basis

15   for trade secrets liability.  And while I do think

16   there are a lot of facts that we're going to need to

17   develop to walk the Court and potentially a jury

18   through the mechanics of the trade secrets test and how

19   that is incorporated to a damages model under the TPSA,

20   we're confident we'll be able to show that at the end

21   of discovery.

22           THE COURT:  All right.  And on that note, I

23   will turn to scheduling.  I see from the questionnaire

24   as well as from statements made by defense counsel that

25   the parties have exchanged initial disclosures.  I'm

1    glad to hear that.  The parties have proposed to have

2    until May 28th to complete fact discovery.  That's

3    somewhat longer than I normally would allow, at least

4    for the initial deadline for fact discovery in a civil

5    case.  My concern in this case is that then we have

6    expert discovery occurring during the summer months.

7              Is it realistic to have expert discovery

8    over the summer?  If so, I'll set the deadlines

9    requested.  Otherwise, I'd be more inclined to move

10   everything back by -- that is forward, closer by one

11   month but I look to counsel for guidance.

12             MR. NAGY:  Your Honor, this is Mr. Nagy for

13   defendants.  I believe both counsel for plaintiff and I

14   have looked at our trial schedules and on this

15   particular issue -- we totally hear you about the

16   summer months.  In this particular case, I think we

17   agreed that it was realistic and necessary for us, just

18   based on our existing schedules.  We've both worked

19   with experts in this area before.  We're confident

20   we'll be able to get it done over the summer, at least

21   from our perspective, your Honor, on the defense side.

22   We think it's certainly realistic.

23             THE COURT:  So you think it's realistic not

24   only for counsel but also for the experts?

25             MR. NAGY:  Your Honor, Tibor Nagy again.

1   Yes, I do.

2            THE COURT:  All right.

3            MR. ROCHE:  Your Honor, this is counsel for

4   -- this is Mr. Roche.  We have also already confirmed

5   availability, so we're confident, to echo Mr. Nagy's

6   point, that we will be able to get it done during the

7   summer.

8            THE COURT:  All right.  So I'm going to set

9   this down for a deadline of May 28th of next year for

10  the completion of fact discovery.  With respect to

11  expert disclosures, there will be two rounds.  In the

12  first round, the party with the burden of proof will

13  serve its opening expert disclosures report as well as

14  the necessary information regarding the experts'

15  qualifications and background.  That opening round, the

16  deadline will be July 2nd.  The next round of expert

17  rebuttal disclosures will be July 30th.  And expert

18  depositions are to completed by August 27th of 2021.

19           With respect to dispositive motions, the

20  parties have asked for almost a month to request a pre-

21  motion conference before the district court.  Judge

22  Block, the district court judge, does require that you

23  first request a pre-motion conference before him.  I

24  haven't checked his particular individual rules lately

25  but just based on my knowledge of the usual individual

1   rules of the district court judges in this district,

2   usually, those are letters of three or four pages,

3   letter briefs of three or four pages.  Do you really

4   need a full month to -- between the close of expert

5   discovery and the deadline for making a request for a

6   pre-motion conference?

7           MR. NAGY:  Your Honor, it's Tibor Nagy.  I

8   suppose we as the defendants are the likely party to be

9   bringing a motion like this, and the short answer is

10  no, we don't.  Hearing you say it, your Honor, you're

11  right.  We can get it done more quickly.  I would ask

12  that we have just -- at least a little bit of time

13  after Labor Day to get such a letter in, if it might be

14  maybe the end of that week or one week after Labor Day,

15  but we can certainly shave off several weeks there.

16          THE COURT:  Is plaintiff's counsel in

17  agreement, Mr. Roche?

18          MR. ROCHE:  Plaintiff has no objection to

19  the -- to moving up that deadline a couple of weeks.

20          THE COURT:  So September 13th.

21          MR. NAGY:  This Mr. Nagy for defendants.

22          MR. ROCHE:  It's fine for me if it's fine

23  for Mr. Nagy.

24          MR. NAGY:  That's great, your Honor, and I

25  was about to say Labor Day is the 6th of September,

1   2021.  It looks like you beat me to that and that's

2   great.  If you would give us that one week, that would

3   be fantastic.

4           THE COURT:  All right.  And then you just

5   check Judge Block's rules with respect to when the

6   response to that is in.  But at least this way, both

7   sides should be presented to Judge Block in September,

8   so rather than prolonging that period of time

9   unnecessarily.

10          I'm just looking to see the proposed

11  deadline for amended pleadings.  It looks like neither

12  side is anticipating amending the pleadings.

13  Therefore, I will deem the deadline to have passed for

14  adding parties or amending the pleadings.  That does

15  not mean that you're barred from amending if something

16  develops in the course of the case and there's good

17  cause to amend but it does mean you would need further

18  leave of the Court to amend on a showing of good cause

19  and due diligence.

20          Are there any other dates or deadlines that

21  any of you would like the Court to include in its

22  minute entry?

23          MR. NAGY:  Your Honor, Tibor Nagy for

24  defendants.  No from our side, thank you.

25          MR. ROCHE:  Your Honor, Mr. Roche for

1   plaintiff.  No further dates on our end.

2              THE COURT:  Now, in every or I would say 99%

3   of the civil cases assigned to me, I schedule a

4   settlement conference with the parties or I refer the

5   case to court-annexed mediation.  In this case, I would

6   certainly be open to referring it to court-annexed

7   mediation if you would like to be able to find a

8   mediator who has expertise in this particular area.

9              Do counsel -- I don't know if you've

10  discussed this with one another. Do you have a

11  preference in this case?

12             MR. NAGY:  Your Honor, this is Tibor Nagy

13  for defendants.

14             MR. ROCHE:  Your Honor --

15             MR. NAGY:  Sorry, Kyle, we keep doing this.

16             MR. ROCHE:  Go ahead.

17             MR. NAGY:  Thanks, I'll be brief.

18             I think counsel and I, your Honor, had a

19  very active discussion about settlement before the suit

20  was filed.  And given that discussion, which led to

21  this request from us that we get this disclosure of the

22  trade secrets, I don't think it would be productive now

23  to have that discussion or a mediation.  I think later

24  in the proceedings, after some discovery has

25  transpired, I think the parties will be in a better

1   position.  My own preference, your Honor, would be to

2   have a conference before you but I'm open to a

3   mediation and I'm happy to talk to counsel about it.

4   So I think if we're given some time and we're allowed

5   to do a little discovery, later in the proceedings I

6   think will be a more opportune time, and I'll be happy

7   to work with counsel.  I don't have a strong preference

8   there.  I'm sure we can work it out by agreement.  But

9   on the defense side, our only view is that right now is

10  not the right time.

11           THE COURT:  I wasn't planning to put it down

12  for an immediate settlement conference or mediation.

13  But in any event -- and I'll certainly hear from

14  plaintiff's counsel.  What I would be prepared to do as

15  an alternative is to set a control date by which

16  counsel can confer with one another and then can file a

17  letter motion proposing either the scheduling of a

18  settlement conference or referral to court-annexed

19  mediation with an approximate time period when the

20  parties feel they will have sufficient discovery to

21  have meaningful settlement discussions.

22           So turning now to Mr. Roche, is that

23  agreeable to plaintiff?

24           MR. ROCHE:  Yes, your Honor, and I echo Mr.

25  Nagy's point on probably the later in discovery, the

1    better.  I think your proposal makes a lot of sense.

2                THE COURT:  All right, later in discovery.

3    Give me a month when you think it makes sense to at

4    least have the control date, keeping in mind that if

5    the case, for example, is referred for court-annexed

6    mediation, it could be another month or two before the

7    parties have agreed upon a mediator, have spoken with

8    the mediator, and have come up with a date.  Let's not

9    have it too late in the process because then it may get

10   impractical to schedule something right away.

11               MR. ROCHE:  Your Honor, my thinking would be

12   a month before discovery is over.  I'm pulling up a

13   calendar now.  Discovery closes May 28th.  I think --

14   and the reason for that is, if there is the prospect of

15   settlement, the parties would be able to avoid expert

16   costs if we plan to have the settlement discussion

17   either right at the end of the discovery or right at

18   the beginning of the expert discovery phase.  So if we

19   set the date for either April 30th or 23rd, I think that

20   would give the parties time to review the discovery

21   they have and potentially avoid, if there is potential

22   for a settlement, incurring expert fees.

23               THE COURT:  Well, again, if we set the

24   control date for the end of April and fact discovery

25   closes in a month, it may be a couple of months before

1   the parties actually sit down with one another, and

2   fingers crossed that we're not going to be doing this

3   virtually, but at least the parties physically or

4   remotely sit down to engage in settlement discussions.

5          I'm hesitant to put it off that long because

6   it may well be that there won't be a mediation or a

7   settlement conference until July or until late in June,

8   when the experts are already putting in time preparing

9   their reports.  So I would propose earlier in April but

10  I throw that out to counsel for their thoughts.

11         MR. NAGY:  Your Honor, Tibor Nagy for

12  defendants.  That makes sense to us.

13         THE COURT:  Mr. Roche?

14         MR. ROCHE:  That makes sense for us as well.

15         THE COURT:  All right.  And remember, if in

16  early April, you're in the middle of some very critical

17  discovery, you can always write to the Court and

18  request additional time to make the -- to get back to

19  the Court about how you would like to proceed to try

20  and resolve the case.  But in the meantime, let's say

21  April 5th will be the control date.  That's the date by

22  which you talk with one another, come to some consensus

23  about whether you prefer a settlement conference versus

24  court-annexed mediation, and provide an approximate

25  time frame as to ideally when you would liike to have

1    those discussions.

2              Now, I referred to a letter motion.  In

3    accordance with my individual rules, any time that

4    you're asking this Court to take any action on a

5    submission, be sure to docket it as an ECF motion

6    event, even if it's letter form.  The reason for that

7    is, we have an electronic tickler system and if you use

8    the motion event, that tickler system is activated and

9    it lets us keep track -- helps us keep track of pending

10   applications in our hundreds of cases.

11             Let me just go through some housekeeping

12   matters with you.  As I indicated earlier, the schedule

13   that I've given you on the record will be included in a

14   minute entry.  I expect that it will be docketed into

15   the ECF court file later this afternoon.  I do expect

16   you to comply with these deadlines.  That's not to

17   suggest that they're etched in stone.  If for any

18   reason you need to modify any of the dates or

19   deadlines, either in the minute entry or in any

20   subsequent order of the Court, you do need leave of the

21   Court for that.

22             My individual rules specify how you should

23   go about making such a request.  The first thing you

24   should do is speak with opposing counsel, see if you're

25   in agreement, and then file a letter motion that is a

1   letter to the Court but docketed as an ECF motion

2   event.  Be sure to include in the letter what change or

3   changes you need, the reason for the request and

4   whether it's on consent or not.  And be sure to include

5   all the dates and deadlines that you want changed.  For

6   example, if you say you want to put off fact discovery

7   but you don't address expert discovery, it's probably a

8   pretty good inference that you want everything pushed

9   back, but don't leave me guessing or speculating.  Just

10  make clear all the deadlines that would be affected

11  that you'd like to have changed.

12         If any discovery disputes come up during the

13  course of the case, try to work those out informally

14  before getting the Court involved.  I really don't need

15  to tell you that.  You've already talked about how

16  you've been engaged in a meet and confer over

17  plaintiff's interrogatory responses or I guess -- I

18  can't remember now whether it was plaintiff's or

19  defendant's.  But in any event, you know the meet-and-

20  confer requirements.  If you're unable to resolve a

21  discovery dispute informally, any application that you

22  want to make on a discovery issue should come to me in

23  the first instance rather than to Judge Block.  My

24  individual rules incorporate by reference Local Civil

25  Rule 37.3(c).  Discovery disputes ordinarily should be

1    addressed in letter motions and letter responses of up

2    to three pages plus attachments.

3              The questionnaire that I had you prepare is

4    for my information only.  This is not a court order

5    even though it's now part of the court record because I

6    had you file it.  I'm not incorporating it by reference

7    into the Court's minute entry.

8              The items that deal with the scope of

9    discovery, items 2 through 6, I see that the parties

10   have either agreed upon the information or have

11   indicated they've reserved their right to go beyond it,

12   but I don't see any red flags in any of those responses

13   that cry out for any judicial resolution at this time.

14   So I'm not going to address any of those issues other

15   than to say that since the minute entry is not going to

16   include those items, you're free to modify them on

17   consent without further leave of the Court.  They're

18   not part of a court order.  For example, if it turns

19   out you want more than 100 requests to admit or more

20   than 25 interrogatories, just speak with opposing

21   counsel.  Try to work that out informally and if you're

22   able to do so, I don't need to hear from you about it.

23              I do encourage the parties to have

24   settlement discussions early and often.  And if the

25   discovery that you're taking leads you to have those

1   discussions sooner than you're currently anticipating,

2   let me know right away.  If you do reach an agreement

3   in principle, file a letter motion asking that the

4   existing schedule be held in abeyance.

5           That covers everything that I had intended

6   to address.  Is there anything else that any of you

7   would like to discuss at this time?

8           MR. ROCHE:  Your Honor, this is Kyle Roche

9   for plaintiff.  Nothing further on our end.

10          THE COURT:  Anything for defendants?

11          MR. NAGY:  Tibor Nagy here, your Honor.  No

12  for defendants, thank you.

13          THE COURT:  All right, everyone take care.

14  I'm going to terminate this proceeding.

15          MR. NAGY:  Thank you, your Honor.

16                  *  *  *  *  *  *  *

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON          November 10, 2020