# DONTZIN NAGY & FLEISSIG LLP

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

Tibor L. Nagy, Jr.
tibor@dnfllp.com

**BY ECF**

November 19, 2020

Hon. Roanne Mann
United States District Court (E.D.N.Y.)
Brooklyn, New York

*BlockCrushr v. Consensys Inc. et al.*
Civ. No. 20-3134 (FB)

Dear Judge Mann:

    We represent Defendants in the above-referenced action and write pursuant to Your Honor's Individual Rules to raise a discovery dispute. Defendants seek an order compelling Plaintiff BlockCrushr, Inc. d/b/a/ Groundhog ("BC" or "Groundhog") to comply with the parties' so-ordered agreement concerning discovery (Dkt. 14, the "Order"). The Order requires that, prior to any other discovery in this case, BC must respond to Defendants' Interrogatory No. 1 (the "Interrogatory"), which asks BC to "identify with specificity the trade secrets that you claim were disclosed to Defendants as alleged in your complaint." The Order specifies that BC "will not lodge any objections to responding to Interrogatory No. 1," and further provides that (i) "the Named Defendants are entitled to rely on the Interrogatory Response as Groundhog's identification of the Disclosed Trade Secrets throughout the litigation, including for purposes of summary judgment," and (ii) BC can amend its Interrogatory Response only "upon a showing of good cause," where "good cause" is defined to require that BC "was not previously able, through the exercise of reasonable diligence, to disclose the new or modified information that it seeks to add through its amendment." ¶¶ 3,4,6.[1] BC is now flat-out refusing to comply with the Order. Rather than identify its own trade secrets "with specificity," BC has served a 27-page narrative interrogatory response that is purposefully vague.[2] BC has refused to cure that vagueness, and instead has (i) told Defendants that it will not identify its "trade secrets to a degree such that [it is] locked in for the purpose of summary judgment arguments,"[3] and (ii) now insists that, in stark contrast to the Order's good-cause requirement for any amendments, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ C knows what its own trade secrets are, agreed to disclose them at the outset of this litigation, and jointly submitted that agreement with Defendants to this Court, which this Court then so-ordered. Defendants respectfully request that Your Honor now compel BC to keep its word and to comply with the Order.

## I. THE ORDER REQUIRES BC TO IDENTIFY ITS TRADE SECRETS WITH "SPECIFICITY"

    According to the Complaint, BC solicited an investment from Defendants; Defendants did due diligence on BC, including reviewing BC's source code, but ultimately declined to invest; and Defendants launched a competing product called Daisy. BC now claims that Defendants misappropriated BC's trade secrets relating to "recurring crypto payments" and used those trade secrets in Daisy's software. Dkt. 1 at 28–32.

    Counsel for BC and Defendants engaged in extensive discussions aimed at streamlining this dispute before BC filed its Complaint, including entering into the agreement embodied in the Order.

---

[1] Unless otherwise noted: (i) all citations to "¶ __" refer to the paragraph numbers of the Pre-Suit Agreement set forth in Exhibit A of the Order, and (ii) all emphasis in quotations was added by Defendants.

[2] *See* Plaintiff's Second Amended Response to Defendants' First Set of Interrogatories, attached hereto as Exhibit A (the "Interrogatory Response" or "Ex. A") (quoted portions highlighted by counsel).

[3] *See* November 11, 2020 Email, attached hereto as Exhibit B (quoted portions highlighted by counsel).

As set forth in the Order, in consideration of certain commitments by Defendants—including Defendants' agreement not to file any Rule 12 motions and to facilitate discovery from certain non-parties—BC agreed to identify its "*actual* trade secrets (and not simply categories or types of trade secrets)." ¶ 3 (emphasis in original). The parties agreed that BC would do so before Defendants provided any discovery, in order to prevent BC from reviewing Defendants' source code and tailoring its alleged trade secrets accordingly. ¶ 10. The Order also provides that Defendants "are entitled to rely on the Interrogatory Response as Groundhog's identification of the Disclosed Trade Secrets throughout the litigation, *including for purposes of summary judgment*." ¶ 3.

## II. BC SERVES A PURPOSEFULLY VAGUE INTERROGATORY RESPONSE AND EXPLICITLY DISAVOWS THE ORDER

On August 31, BC served its initial Interrogatory Response. That response was comprised of a 20-page narrative summary that failed to identify BC's alleged trade "with specificity" and instead purported to identify numerous *categories* of trade secrets. After the parties met and conferred, BC agreed to supplement its Response by October 30 and provide the requisite specificity, at the same time that it provided its Source Code Specification.[4] BC provided an Amended Response on October 30, but that Amended Response still failed to provide the specificity required by the Order. The parties conferred again, and BC agreed to remedy some, but not all, of the deficiencies in its response.

On November 11, BC served its Second Amended Response. In an email BC sent that same day, BC refused to provide any further specificity and explicitly disavowed the terms of the Order, claiming that it was not required to "disclose our trade secrets to a degree such that we are locked in for the purpose of summary judgment arguments." Ex. B at 1. The parties conferred again on November 13 but were unable to resolve this dispute.

## III. BC SHOULD BE COMPELLED TO COMPLY WITH THE ORDER

Interrogatory No. 1 requires BC to "[i]dentify with specificity the trade secrets that you claim were disclosed to Defendants as alleged in your complaint." Because BC knows what its own trade secrets are, and which of them it disclosed to Defendants, BC is capable of fully responding to Interrogatory No. 1 now and without the need for discovery from the Defendants.[5] In fact, BC *agreed* to do precisely that in the stipulation that became the Order. Thus, BC's attempt to repudiate the Order should be rejected.

---

[4] The Order provides that, to the extent BC claims that any of *its* source code embodies its trade secrets, BC must identify for Defendants the "particular source code that Groundhog asserts are its trade secrets," which the Order defines as the "Source Code Specification." ¶ 5.

[5] Courts and even legislatures routinely require plaintiffs to identify their alleged trade secrets with specificity at the outset of a lawsuit. *See Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) ("Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets."); Cal. Civ. Proc. Code § 2019.210 ("In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity.").

To the extent BC argues that its Interrogatory Response does identify its trade secrets with specificity, the record refutes that assertion. The Interrogatory Response is comprised of a purposefully vague 27-page narrative response. While BC apparently believes that the *length* of its response demonstrates its compliance, BC has it exactly backwards: the length of BC's narrative response merely increases the size of the proverbial "haystack" through which the Defendants must comb to find the "actual" trade secrets. *See, e.g.*, *Digital Assurance Certification, LLC v. Pendolino*, No. 6:17-CV-72-ORL-41TBS, 2018 WL 9669762, at *4 (M.D. Fla. Sept. 9, 2018) (finding that plaintiff's long, narrative description of trade secrets provided in responses to interrogatories lacked sufficient "specificity" and was "insufficient to inform defendants of the claims being made against them" and requiring plaintiff to "refine the list of Trade Secrets").

The size of the "haystack" is, however, only part of the problem. Another significant problem is the fact that BC still insists on pointing to *categories* of information rather than specifically enumerating the actual trade secrets it purportedly disclosed, as the Order requires. ████████████████████████████ ████████████████████████████ But ████████████████████████████ is not an actual, specific piece of information—it is a *category* of information. What *aspect* of the structure is the purported trade secret? To the extent it is the "six core components," what *are* those six components? The Interrogatory Response does not say. Nor does it say whether the trade secret is the *use* of those six components, something specific about the *way* those components are connected, or anything else that might allow Defendants to figure out the line between what the trade secret purportedly is, and what it isn't. *See Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292 (DLC), 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008) ("Specificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation."). Defendants need to know what BC's trade secrets actually are (and aren't) so that, for example, we can determine whether and to what extent those trade secrets (i) exist in the prior art, (ii) exist in Daisy's code,[6] and/or (iii) were publicly disclosed by BC.

BC refuses to disclose its alleged trade secrets with specificity precisely because it wants to (i) thwart Defendants' ability to take targeted discovery and (ii) make the identity of its trade secrets a "moving target" for summary judgment purposes. In BC's own words, ████████████████ ████████████ (Ex. A at 27), including in particular our forthcoming summary judgment arguments. But that is exactly what the Order *bars* BC from doing.

BC knows what its own trade secrets are, is able to disclose them with specificity now, and agreed to do so in a joint stipulation which this Court has so-ordered. Defendants respectfully request that Your Honor order BC to comply with the Order, including by: (a) providing an enumerated list of "the *actual* trade secrets (and not simply categories or types of trade secrets)" (¶ 3) and, for each such enumerated trade secret, (b) identifying it "with specificity" (*id.* at 9), so that Defendants (and ultimately this Court) readily can tell what each claimed trade secret actually is and what it is not.

---

[6] To the extent any of BC's alleged trade secrets exist in Daisy's code, Defendants also need to determine *the date* on which such trade secrets first existed in Daisy's code, as they may have been in Daisy's code *before* BC ever disclosed any of its trade secrets to Defendants.

Dated: November 19, 2020	Respectfully submitted,

By: */s/ Tibor L. Nagy*

Tibor L. Nagy
**DONTZIN NAGY & FLEISSIG LLP**
980 Madison Avenue
New York, New York 10075
(212) 717-2900
tibor@dnfllp.com

Clement Seth Roberts
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105
(415) 773-5700
croberts@orrick.com

Laura B. Najemy
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
222 Berkeley Street, Suite 2000
Boston, MA 02116
(617) 880-1800
lnajemy@orrick.com

*Attorneys for Defendants ConsenSys Inc., ConsenSys Fund I, L.P, ConsenSys Diligence, Inc., ConsenSys GP I, LLC, and ConsenSys Ventures LLC*